PARKER, APPELLANT, *v.* CARDWELL, WARDEN, APPELLEE.

194

(No. 72AP-114—Decided August 8, 1972.)

*Mr. William H. Bluth* and *Mr. Philip Sheridan*, for appellant.

*Mr. William J. Brown*, attorney general, *Mr. Nicholas Curci*, *Mr. Jack H. Cook* and *Mr. Rupert N. Beetham*, for appellee.

STRAUSBAUGH, J. This is an appeal from a judgment rendered by the Common Pleas Court on February 29, 1972, denying petitioner's writ of habeas corpus.

The record indicates that the petitioner was indicted in the January 1961 term of the Court of Common Pleas of Montgomery County on the charge of robbery in violation of R. C. 2901.12. Upon trial he was found guilty by a jury and sentenced on June 19, 1961, to the Ohio Penitentiary for a term of 1 to 25 years. The record indicates further that petitioner was paroled on September 21, 1964; was declared a parole violator on December 4, 1964; and was returned to the Ohio Penitentiary on December 15, 1964. He was again paroled on February 11, 1970. The special minutes of the Adult Parole Authority disclose further that:

"* * * on the 24th day of May, 1971 the Superintendent of Parole Supervision has brought information to the attention of the Adult Parole Authority that the Parolee has violated the terms and conditions of his Parole; and has recommended that he be declared to be a Parole Violator;

"and, Whereas, the Superintendent has submitted a copy of the report of the Parole Officer, as of May 10, 1971:

"and, Whereas, the Adult Parole Authority has carefully considered all of the factors brought to its attention concerning this case;

"now, Therefore, by virtue of the authority vested in the Adult Parole Authority by Section 2967.15 of the Revised Code, he is hereby declared to be a Parole Violator, effective May 24, 1971."

On September 16, 1971, petitioner filed a petition for a writ of habeas corpus in the Common Pleas Court, alleging that he was being illegally restrained in the Ohio Penitentiary. The gist of petitioner's contention is that he was declared to be a parole violator and returned to the Ohio Penitentiary without a hearing to determine whether he had violated the terms and conditions of his parole. On January 20, 1972, respondent filed a motion to dismiss the petition on the ground that parole revocation is not reviewable in a habeas corpus proceeding in Ohio. Follow-

ing consideration of the motion, the Common Pleas Court denied petitioner's writ of habeas corpus, based upon the two Ohio Supreme Court rulings of *In re Varner* (1957), 166 Ohio St. 340, and *Rose* v. *Haskins* (1970), 21 Ohio St. 2d 94. The Supreme Court, in *In re Varner*, held:

"The action of the Pardon and Parole Commission, in declaring a paroled convict to be a parole violator before the expiration of the maximum period of his sentence and before his final release by that commission or pursuant to executive clemency, is not reviewable in a habeas corpus proceeding, even though such convict has been returned to the penitentiary or to the reformatory because of such action."

In *Rose* v. *Haskins*, the Supreme Court reaffirmed its position in *In re Varner*, and held:

"It is well established in Ohio law that parole is a matter of grace. While parole is a release from confinement, the parolee is still in the legal custody of the Department of Mental Hygiene and Correction. * * * As such, a parolee has only privileges and not the claimed constitutional rights afforded him prior to conviction. Petitioner has urged these same issues in the federal courts and has been denied relief. * * *

" ' * * *

" ' * * * A state prisoner does not have a constitutional right to a hearing on a state parole revocation * * *.' "

Therefore, until recently the law of Ohio has been well established that parole is a matter of grace and that the action of the Adult Parole Authority in declaring a paroled convict to be a parole violator before the expiration of the maximum period of his sentence is not reviewable in a habeas corpus proceeding. However, on June 29, 1972, the United States Supreme Court, in *Morrissey* v. *Brewer*, 408 U. S. 471, 33 L. Ed. 2d 484, in an eight-to-one decision reversed a decision by the United States Court of Appeals for the Eighth Circuit which held that a parolee who is still in custody is not entitled to a full adversary hearing. The United States Supreme Court, in *Morrissey*, laid down

rules which must henceforth be followed by the Adult Parole Authority in all cases involving parole revocation.

The court states that implicit in the administrative system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the condition of his parole, with the caution, however, that revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in a criminal proceeding does not apply to parole revocations. The court then develops specific guidelines concerning the nature of the process that is due in the two stages of a typical process of parole revocation.

The first stage (33 L. Ed 2d, at 496) occurs when the parolee is arrested and detained while the second occurs when the parole is formally revoked. In the first instance, the court observes that due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation and that such inquiry should be seen as in the nature of a "preliminary hearing" to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts which would constitute a violation of parole conditions. The court notes that, in its view, due process requires that reasonable grounds exist for revocation of parole and that this determination should be made by someone not directly involved in the case. Further, the parolee should be given notice of the hearing and the reason for such hearing together with a statement of the violations which have been alleged. Moreover, the process would permit the parolee to appear and speak in his own behalf and to bring letters, documents or individuals who can give relevant information to the hearing officer. Additionally, at the request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning, unless the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed. Further, the hearing officer has the duty of making a summary or digest of what transpires at the hearing. And

finally, based on the information before him, the hearing officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation.

The second stage (33 L. Ed. 2d, at 498) involves the revocation hearing, and the court identifies the minimum requirements of due process that are to be observed for that hearing. They include:

"* * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parol board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

It is essential that the above procedure be followed in the future in all cases involving revocation of parole. Petitioner argues that the application of these rules must be applied in the instant case. He cites in support the decision of the United States Supreme Court in *Goldberg* v. *Kelly* (1970), 397 U. S. 254, wherein the court held that before welfare benefits could be terminated there had to be a full evidentiary hearing, prior to which notice of the reasons for termination had to be supplied, and at which hearing the welfare recipient had the right to be represented by counsel and to confront and cross-examine witnesses.

Inasmuch as that case involved the termination of welfare benefits and had no connection with parole revocation, the cases are distinguishable and have no bearing on one another. Furthermore, it is quite clear in the court's decision in *Morrissey, supra*, that the Supreme Court is aware that its decision changes the law that previously existed on this question. The court explicitly states that the basic requirements as set forth in the decision "are applicable to future revocations of parole." Therefore, by

implication they would not be applicable to parole revocations made prior to the rendering of the *Morrissey* decision, wherein (33 L. Ed. 2d 499), the court says:

"We have no thought to create an inflexible structure for parole revocation procedures. The few basic requirements set out above, which are applicable to *future revocations of parole*, should not impose a great burden on any State's parole system. * * *" (Emphasis added.)

The logic of this reasoning is inescapable when one contemplates the avalanche of habeas corpus petitions which would unquestionably be filed in the courts of every state due to the flood gates being opened had the court ruled that the new requirements would have retroactive application. The judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

TROOP, P. J., and REILLY, J., concur.